UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

|                                           |   |                       |
|-------------------------------------------|---|-----------------------|
| EXEL INC.,                                | ) |                       |
| Plaintiff,                                | ) | No. 1:14-CV-00081-JAR |
| v.                                        | ) |                       |
| INTERNATIONAL BROTHERHOOD OF              | ) |                       |
| TEAMSTERS, LOCAL NO. 600,                 | ) |                       |
| Defendant.                                | ) |                       |

## MEMORANDUM AND ORDER

This matter is before the court on the Parties' Cross Motions for Summary Judgment (Docs. 16, 23). The Motions are fully briefed and ready for disposition. For the following reasons, Plaintiff Exel, Inc.'s ("Exel" or "the Company"[1]) Motion for Summary Judgment (Doc. 16) will be **DENIED** and Defendant International Brotherhood of Teamsters, Local No. 600's ("Teamsters Local 600" or "the Union") Motion for Summary Judgment (Doc. 23) will be **GRANTED**.

### I. BACKGROUND

The Parties do not dispute the following facts.[2] Exel, a Massachusetts corporation, is engaged in the business of third party logistics services in various locations. Exel owns and operates a trailer switching operation in Jackson, Missouri. Exel employs approximately 42

---

[1] Additionally, the Arbitrator, George Fitzsimmons, uses the terms "Employer" and "Company" to describe Exel in his decision.

[2] *See* Exel's Statement of Undisputed Material Facts in Support (Doc. 17-1), the Union's Statement of Undisputed Facts (Doc. 25), Exel's Response to the Union's Statement of Undisputed Facts (Doc. 27), the Union's Response to Exel's Statement of Undisputed Material Facts (Doc. 29), and Exel's Reply to the Union's Statement of Additional Facts (Doc. 30).

drivers at the Jackson, Missouri operation. The drivers employed by Exel at its Jackson, Missouri operation are represented by the Union for the purposes of collective bargaining. Exel and the Union were parties to a collective bargaining agreement covering the drivers at the Jackson, Missouri operation for the period from September 10, 2012 to September 9, 2014 (the "CBA") (Doc. 1-2).

Article 12 of the CBA lays out the agreed upon grievance procedure. Exel and the Union were unable to resolve several grievances in the first three steps of the grievance procedure and therefore agreed to consolidate these grievances into a single arbitration proceeding. Pursuant to Step 4, formal arbitration, the Parties selected George Fitzsimmons ("the Arbitrator") to preside over the arbitration proceeding. Step 4 additionally states, in relevant part, the following:

> Each party may appear and present evidence at the hearing before the selected arbitrator, whose decision will be final and binding on all parties and affected employees, provided the decision is made within the authority granted by the parties.

(*Id.* at 17).

The Parties agreed that they would present a written stipulation of facts and the issue for consideration by the Arbitrator. The Parties filed a Stipulation of Uncontested Facts and the Issue ("the Stipulation") drafted by the Company's attorney and executed by a non-attorney Union Officer. In the Stipulation, the Parties indicate, "The parties have agreed to submit to the Arbitrator this Stipulation of Uncontested Facts and the Issue, without prejudice to the rights of either party to advance arguments in support of their respective contentions" (Doc. 1-3 at 1). In paragraph 11, the Parties described the grievances, which were not attached to the Stipulation, as follows: "Grievances were filed asserting that, under the CBA, hours of holiday pay should be counted as hours worked for overtime purposes" (*Id.* at 3). The Stipulation included several

provisions of the CBA. Specifically, the Stipulation cited to Article 23 of the CBA, entitled "Holidays,"

> Eligible employees working on any recognized holiday will receive holiday pay in addition to pay at time and one-half (1 1/2) the regular straight time rate for work performed. Holiday pay will be eight (8) times the applicable hourly rate. Holiday pay shall not be pyramided with hours worked for overtime purposes.

(*Id.* at 2). The Stipulation also cited to Article 27, "Wage Schedules," which in relevant part reads, "Overtime premium is paid only on hours actually worked" (*Id.*). Finally, the Stipulation included the following stipulation of the issue:

> Did the Company violate the CBA by failing to count hours of holiday pay as hours worked for overtime purposes, and, if so, what is the appropriate remedy?

(*Id.* at 4).

The Union and Exel submitted written briefs to the Arbitrator on January 20, 2014 and January 23, 2014 respectively (Doc. 17-2 at 4-48). In its brief, the Union noted, "The Union . . . has mutually agreed that this matter at hand be settled by a Stipulation of Uncontested Facts and Issues" (*Id.* at 6). The Union's brief included a discussion regarding how overtime was paid for employees who actually worked on holidays in November and December of 2012 as well as a reference to a conference call that allegedly occurred in May 2013 (*Id.* at 5). The Union also incorporated the grievances of Thomas Ring and Tim Kassinger for Memorial Day 2013, and a blanket grievance for Independence Day 2013 in its background section and then attached the grievances to its brief (*Id.* at 5, 15, 17, 20). The Union additionally addressed how holiday pay is treated under a different collective bargaining agreement between Exel and the Union for a different operation including a copy of an old grievance regarding the treatment of holiday pay at that facility (*Id.* at 6, 24). The Union also cited to cases that dealt with the treatment of actual hours worked on overtime pay (*Id.* at 7-9). On the other hand, in its brief, Exel argued that "The

Union here is seeking to include all holiday pay as time worked for purposes of computing overtime under Article 27. We submit that it simply cannot be done under the plain terms of the Labor Agreement" (*Id.* at 45). The Company did not submit any exhibits.

On March 18, 2014, the Arbitrator issued an arbitration award (the "Award") (Doc. 1-1). The Arbitrator identified the grievants as Tim Kassinger, Thomas Ring and Larry Buckles[3] "claiming the Employer violated the Contract by not including every hour of holiday pay as additional hours worked for purposes of computing overtime pay" (Doc. 1-1 at 3). The Arbitrator identified the issue as:

> Did the Employer violate the Contract by failing to include every hour of holiday pay as additional hours worked for the purpose of computing overtime pay? If so, what shall be the remedy?

(*Id.* at 3). While the Arbitrator noted, "there seems to be somewhat of a disconnect between the Stipulated Issue and the arguments in the briefs," he addressed both the Union and the Company's positions and concluded:

> The grievances filed herein are sustained. The Company is ordered to make those employees whole by adding the hours actually worked by the employees on a contractually designated holiday to hours actually worked that work week in paying overtime over 40 hours worked that work week.
>
> Insofar as any grievance seeks to add the contractual benefit of eight hours straight time holiday pay to the hours actually worked that work week, those grievances are denied.

(*Id.* at 6, 10).

On June 6, 2014, Exel filed suit to partially vacate the Arbitrator's award pursuant to section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. The matter is before the Court on the Parties' cross-motions for summary judgment. Exel argues the Arbitrator formulated and decided an issue not presented to him by the Parties and improperly relied upon

---

[3] Larry Buckles, as shop steward, submitted the generalized grievance on behalf of the Union (Doc. 17-2 at 20-21).

extraneous evidence when doing so. The Union asserts that the Arbitrator did not exceed his authority because the stipulated issue was ambiguous and the Arbitrator was free to look at matters beyond the stipulated issue, specifically the grievances.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or establish "that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal–Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

## III. DISCUSSION

"Judicial review of an arbitrator's decision is extremely limited. Courts must accord an extraordinary level of deference to the underlying award itself." *PSC Custom, LP v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Local No. 11-770*, 763 F.3d 1005, 1008 (8th Cir. 2014) (internal quotations omitted). "As long as the

arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (internal quotation omitted). Further, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 38.

"[A]lthough an arbitrator has broad authority, the arbitrator is not wholly free from judicial review. An arbitrator's award can be vacated for the reasons provided in the Federal Arbitration Act (FAA)." *Williams v. Nat'l Football League*, 582 F.3d 863, 883 (8th Cir. 2009) (internal quotations omitted). "The FAA authorizes a district court to vacate an arbitration award in four limited circumstances, and in the absence of one of these grounds, the award must be confirmed." *Med. Shoppe Int'l, Inc. v. Turner Investments, Inc.*, 614 F.3d 485, 488 (8th Cir. 2010). A federal court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. In this case, the Company asserts that the Arbitrator exceeded the scope of his authority by considering an issue in addition to the Parties' stipulated issue and that the proceedings were fundamentally unfair because the Arbitrator considered evidence outside the scope of the stipulation of uncontested facts.

### A. Stipulated Issue

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit" *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "When two parties submit an issue to arbitration, it confers authority upon the arbitrator to decide that issue." *Local 238 Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers v. Cargill, Inc.,* 66 F.3d 988, 990 (8th Cir. 1995) (citing *First Options, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995)). "Once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Local 1B*, 284 F.3d 821, 825 (8th Cir. 2002) (internal quotations omitted). "'In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority.'" *Laidlaw Transit, Inc. v. Int'l Bhd. of Teamsters Local 610*, 423 F. Supp. 2d 975, 980 (E.D. Mo. 2006) (quoting *Lackawanna Leather Co. v. United Food & Comm'l Workers Int'l Union, Dist. 271,* 706 F.2d 228, 230-31 (8th Cir. 1983) (en banc)).

The Company asserts that the only issue for decision was clear in the Stipulation but the Arbitrator went beyond the Stipulation and formulated an entirely new issue not agreed upon or jointly submitted to him. Specifically, the Arbitrator considered the treatment of hours actually worked on a holiday when the Stipulation said nothing about hours *actually* worked. The Union asserts that the Arbitrator did not improperly change the stipulated issue because the phrase "holiday pay" can be read to include the pay for hours an employee actually worked on a holiday.

An arbitrator's authority stems in the first instance from the arbitration clause of the CBA. The clause in this case states:

> Each party may appear and present evidence at the hearing before the selected arbitrator, whose decision will be final and binding on all parties and affected employees, provided the decision is made within the authority granted by the parties.

(Doc. 1-2 at 17). The "authority granted by the parties" arises in the Parties' joint statement of the issue. The statement of the issue reads: "Did the Company violate the CBA by failing to count hours of holiday pay as hours worked for overtime purposes, and, if so, what is the appropriate remedy?" (Doc. 1-3 at 4). The question before the Court is whether the Arbitrator exceeded his authority by formulating a second issue.

The Court finds that the statement of the issue is sufficiently broad and ambiguous to include the issue of holiday pay for hours actually worked. Specifically, the Court finds that the definition of "holiday pay" in the Stipulation, even in the context of the stipulated facts, could be either the 8 hours of regular pay an employee would receive regardless of whether he or she worked that day or the pay for hours an employee actually worked on a holiday. *See Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO*, 627 F.2d 853, 857 (8th Cir. 1980) (finding the term "employee working conditions" could include both the condition of the work place provided for the employee and also shift scheduling). Also, to the extent that the Stipulation is ambiguous as to whether it should be broadly construed to include hours actually worked on a holiday, the Stipulation was drafted by the Company (Doc. 28-1 at ¶4) and, under common law, any ambiguity shall be construed against the interest of the party who drafted it. *United States v. Seckinger*, 397 U.S. 203, 210 (1970). Therefore, "[w]hile this Court has no quarrel with the requirement that the arbitrator cannot decide issues not submitted to him, it is not every minor deviation from the language of the submission that will

warrant a declaration that the arbitrator exceeded his jurisdiction." *Teamsters Local Union No. 284 v. Maremont Corp.*, 515 F. Supp. 168, 171 (S.D. Ohio 1980). Further, as discussed in more detail in the next section, the grievances underlying the arbitration clearly indicate that the issue includes one of hours actually worked on a holiday. *See Id.* at 171-72. Finally, "the essence of the resulting award" was drawn from the CBA, specifically Article 23. *Kroger Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local No. 661,* 380 F.2d 728, 731 (6th Cir. 1967).

Accordingly, the Court finds that the Arbitrator did not exceed his authority in determining whether hours actually worked on a holiday counted towards overtime pay.

## B. Fundamental Unfairness

"Procedural irregularities . . . may also result in such fundamental unfairness as to warrant the vacation of an arbitral award." *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997) (internal quotations omitted). "Although he is not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to a dispute an adequate opportunity to present its evidence and argument." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013) (internal quotations omitted). However, "[a]n arbitrator's procedural error must amount to bad faith or affirmative misconduct to warrant judicial intervention." *Teamsters Local Union No. 688 v. Supervalu, Inc.*, No. 4:02CV00309 RWS, 2003 WL 145587, at *6 (E.D. Mo. Jan. 14, 2003).

The Company asserts that the Arbitrator improperly relied upon evidence outside the scope of the Stipulation, specifically:

1. The manner in which hours worked on holidays in 2012 were counted toward the overtime threshold.

2. The content and underlying facts of three grievances – two filed by Thomas Ring and Tim Kassinger for Memorial Day 2013, and a third for Independence Day 2013 – which were not mentioned in or attached to the Stipulation.
3. The substance of an alleged conference call between representatives of Exel and the Union in or about May 2013, and documents supposedly discussed during that call.
4. How holiday pay is treated under a different collective bargaining agreement between Exel and the Union for a different operation including a copy of an old grievance regarding the treatment of holiday pay at that facility.

(Doc. 17 at 10-11). The Company argues that by considering evidence outside the scope of the Stipulation, the proceedings were fundamentally unfair (*Id.* at 11).

The Union responds that the Stipulation was "a floor, not a ceiling" and that nothing in the Stipulation or in the record reflects the Parties were limited to only the evidence presented in the Stipulation (Doc. 28 at 4). The Union also asserts that the Company concedes that there is no reason to believe that the Arbitrator considered the Parties' May 2013 conference call or the contention regarding the operation of the Company's Hazelwood facility (*Id.* at 4-5). Regarding the grievances, the Union argues that, "Where the very purpose of the arbitration is to resolve the underlying grievances between the parties, it makes no sense to contend that it is improper for the Arbitrator to consider the grievances themselves" (*Id.* at 5). Finally, the Union asserts that the Company received the Union's brief forty-five day prior to the issuance of the Arbitrator's award and, during that time, "could have: a) objected to the Union's facts, evidence, or argument, b) submitted to the arbitrator any countervailing facts, evidence or arguments, or c) sought further clarification from the arbitrator" (*Id.*).

**1. Evidence Considered by the Arbitrator**

**a. Grievances**

First, the Court finds that the Arbitrator properly considered the grievances attached to the Union's brief because the grievances appear to be the grievances underlying the arbitration and were incorporated by reference in the Stipulation. The Company neither admits nor denies

the Union's contention that these grievances, the grievances of Thomas Ring and Tim Kassinger for Memorial Day 2013, and a third generalized grievance for Independence Day 2013, are the grievances underlying the arbitration (Doc. 1 at ¶14). The Company concedes that the Parties could not resolve these grievances, which deal with holiday hours actually worked (Doc. 30 at 5). However, the Company "[d]enie[s] that the parties submitted to the Arbitrator the issue of hours actually worked on holidays" (*Id.*). Instead, the Company argues that the grievances at issue before the Arbitrator asserted that, under the CBA, "hours of holiday pay should be counted as hours worked for overtime purposes" (Doc. 1 at ¶14). Therefore, by only focusing on the issue and not the underlying grievances, the Company fails to dismiss the Union's contention that these grievances are the underlying grievances or to present the Court with the specific underlying grievances if, in fact, there are others dealing with the issue as the Company appears to frame it. Without a grievance, there would be nothing to arbitrate, because no violation of the CBA would be involved. Accordingly, the Court finds that these grievances are the grievances underlying the arbitration and, as such, the Arbitrator could properly consider them even if they were technically outside the four corners of the Stipulation. Furthermore, the Stipulation could be construed to encompass the grievances for holiday hours actually worked because, as previously discussed, the term "holiday pay" may include hours actually worked on a holiday.

### b. Previous Practice

Next, the Court finds that the Arbitrator properly considered the previous practice, specifically, the manner in which hours worked on holidays in 2012 were counted toward the overtime threshold. The law in this Circuit is clear, an arbitrator "may look to sources other than the collective bargaining agreement . . . to aid in his interpretation" of the agreement. *Keebler Co. v. Milk Drivers & Dairy Employees Union*, 80 F.3d 284, 288 (8th Cir. 1996) (citing *Iowa*

*Beef Processors, Inc.*, 627 F.2d at 857). Specifically, an arbitrator may look at "past prevailing practices in the company plant." *Iowa Beef Processors, Inc.*, 627 F.2d at 857 (citations omitted). Accordingly, the Court finds that the Arbitrator properly considered the manner in which hours worked on holidays in 2012 were counted toward the overtime threshold.

### c. Remaining Facts

The Court finds that the remaining facts, a conference call between the Parties in May 2013 and how holiday pay is treated under a different collective bargaining agreement between the Parties at a different facility, were not properly before the Arbitrator because they were outside the scope of the Stipulation, but that because the Company was not prejudiced by their inclusion in the Union's brief, the award should not be partially vacated on these grounds. When a Court finds an error in the arbitration proceedings, the Court "must consider the impact of this limited error on the arbitrator's overall award." *Alvey, Inc. v. Teamsters Local Union No. 688*, 132 F.3d 1209, 1213 (8th Cir. 1997). As the Company readily admits, the Arbitrator does not appear to have considered the substance of a conference call between the Parties in May 2013 or how holiday pay is treated under a different collective bargaining agreement between the Parties at a different facility (Doc. 17 at 10, 14). Accordingly, the Court finds that the Company was not prejudiced by this error because the Arbitrator does not appear to have considered these facts and thus the Award shall not be partially vacated on these grounds.

Therefore the Court finds that the Arbitrator properly considered the grievances and the past prevailing practice and that any limited error in including evidence outside the scope of the Stipulation does not warrant the Court partially vacating the Award.

**2. Full and Fair Hearing**

Finally, even if the Court were to conclude that the evidence outside the scope of the Stipulation was improperly reviewed by the Arbitrator or that the Arbitrator impermissibly used the evidence to formulate a second issue, the Court finds that the Company was not so prejudiced as to have been deprived of its right to a full and fair hearing. The Union filed its brief on January 28, 2014 and the Arbitrator issued his opinion on March 18, 2014. During that approximately 45-day period, the Company took no action in response to the brief. Although the Company asserts that the Arbitrator had the responsibility to take action if he had questions about the scope of the issue or his consideration of extraneous evidence, that burden firmly lies with the Company. *See Maremont Corp.*, 515 F. Supp. at 173 (finding the company was not so prejudiced as to have been deprived of a fair hearing when the company objected to a procedural issue but did not seek leave to file a reply brief or reopen the hearing for additional evidence). *See also Dist. 1199 S.C. Nat'l Union of Hosp. & Health Care Employees, RWDSU/AFL-CIO v. Tuomey Hosp., Inc.,* No. 82-318-0, 1982 WL 1979, at *3 (D.S.C. June 7, 1982) (finding that the Hospital was not denied a fair hearing when it did not object to the Union's brief and made no effort to request an opportunity to file a reply brief or to reopen the hearing). Accordingly, the Court cannot find that the Company was so prejudiced by the admission of any potentially improper evidence or the formulation of a second issue as to have been deprived of a full and fair hearing.

Therefore, the Court finds that the procedural irregularities do not rise to the level of fundamental unfairness to warrant partially vacating the award.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Exel, Inc.'s Motion for Summary Judgment (Doc. 16) is **DENIED** and Defendant International Brotherhood of Teamsters, Local No. 600's Motion for Summary Judgment (Doc. 23) is **GRANTED.** An appropriate Judgment will accompany this Memorandum and Order.

Dated this 18th day of June, 2015.

                                          **JOHN A. ROSS**
                                          **UNITED STATES DISTRICT JUDGE**